[No. 801.  Decided July 12, 1893.]

THE LOMBARD INVESTMENT COMPANY, *Appellant*, v.
LEMUEL O. CARTER *et al.*, *Respondents*.

AGREEMENT FOR SALE OF LAND — INDEFINITENESS — SPECIFIC
PERFORMANCE.

A letter from the general land agent of a railroad company to a settler upon lands of the railroad, reciting that "answering yours of the 8th inst., I have to say that if you are the first settler upon [certain described land], and if you continue to reside upon and improve said land until it shall be offered for sale, the same being strictly agricultural in character, you will be entitled to the first privilege of purchase at the appraised valuation, which will be fixed without reference to your improvements. The mere fact that another party has written a letter applying for the purchase of said land does not in any way affect your rights in the premises. No rights can be acquired to lands of the company not in market, except by settlement upon or improvement thereof," does not constitute a valid contract for the conveyance of said land which can be specifically enforced, although the condition as to settlement and improvement may have been complied with.

*Appeal from Superior Court, Spokane County.*

*Crow & Richardson*, for appellant.

*Fenton, Henley & Fenton*, and *C. F. Backus*, for respondents.

The opinion of the court was delivered by

STILES, J.—This action was brought to foreclose two mortgages upon certain land in Spokane county. These mortgages were executed by Lemuel O. Carter and wife on the 25th day of September, 1889, at which date the mortgagors had received from the Northern Pacific Railroad Company, then the owner of the land, a contract in writing to convey it in consideration of the sum of $635, over $500 of which was paid upon the delivery of the contract, and the balance of which was paid by the appellant in this

action out of the money loaned to Carter and wife. Pursuant to the contract made with Carter, the Northern Pacific Railroad Company executed and delivered its deed for the land in question, which was delivered to Carter, and filed for record in the auditor's office of Spokane county February 10, 1890.

The respondents Strong and wife defended against the proposed foreclosure by an allegation, contained in a cross complaint, that on the 21st day of April, 1884, they had entered upon and taken possession of the premises in controversy by consent and permission of the Northern Pacific Railroad Company, and that immediately thereafter they commenced to make, and did make, valuable improvements thereon; and by the further allegation that on or about the 18th day of October, 1884, while still in the possession of the premises, Strong entered into a written contract with the Northern Pacific Railroad Company, wherein it was agreed between the parties that, if Strong should continue to reside upon and improve the land until the same should be offered for sale by the company, Strong should then and in that event be entitled to the first privilege of purchasing the land from the Northern Pacific Railroad Company at the then valuation, exclusive of the improvements made by him. The cross complaint further showed that Strong and wife had continued to live upon the land, and had made improvements thereon of the value of about $1,000. The further allegations of the cross complaint were, that the purchase made by Carter was with full knowledge of Strong's possession, and of his alleged right to purchase, and that the appellant and Carter contrived a scheme by which the Northern Pacific Railroad Company was deceived into selling the land to Carter; the appellant also being alleged to have had knowledge of the possession of Strong, and of all the facts relating to the alleged contract between him and the railroad company.

We shall assume, for the purposes of this decision, that the cross complaint stated sufficient facts for the purpose of raising the issue tried by the court, although the terms of the pleading were somewhat indefinite. We shall also assume it to have been a proven fact that at all times subsequent to April 21, 1884, Strong was in the actual, open and notorious possession of this land, residing upon and cultivating it, until after Carter had procured his contract for the sale to him. Under such a state of things, it is a well established rule of law that where one is holding a valid contract for the sale of lands, from the owner thereof, and is in possession of the land, if a third person takes the title from the owner, he is in position to charge the grantee from the owner with knowledge of all his rights under his contract. This proposition is not controverted by appellant, and is held by all the authorities. 2 Pom. Eq. Jur., § 614.

The only vital question in this case, then, is, did Strong have a valid contract with the Northern Pacific Railroad Company? To make a contract for the sale of lands, there must be an agreement in writing, subscribed by the party to be charged, subject to the well known exceptions which in equity relieve the purchaser from his failure to obtain such a contract in compliance with the statute of frauds. As before stated, Strong's settlement upon this land was made April 21, 1884, and it was begun after receiving oral assurance from a real estate agent in the city of Spokane, who sometimes sold land for the Northern Pacific Railroad Company on commission, that if he should be the first settler upon any lands of the Northern Pacific Railroad Company at the time they came into market the company would deal with him rather than with any other person choosing to buy that particular tract. But this agent had no authority to make any contract with the proposing purchasers of lands of the railroad company, and his statement to

Strong was nothing more than a statement of the general policy of the company. With this assurance, however, Strong went upon the land and established his residence there, made certain improvements, cultivated a portion of the tract and took the crops which he raised. Subsequently, and about October 8, 1884, Strong addressed a letter to the general land agent of the railroad company, which is not in the record, but in which it appears that he made certain inquiries looking to a preference of himself as a purchaser. In response to that letter the company's agent, Paul Schulze, wrote as follows:

"OCTOBER 18, 1884.

"*Mr. Walter Strong* — DEAR SIR: Answering yours of the 8th inst., I have to say that if you are the first settler upon the northeast quarter of section 5, tp. 27 n., r. 42 east, and if you continue to reside upon and improve said land until it shall be offered for sale, the same being strictly agricultural in character, you will be entitled to the first privilege of purchase at the appraised valuation, which will be fixed without reference to your improvements. The mere fact that another party has written a letter applying for the purchase of said land does not in any way affect your rights in the premises. No rights can be acquired to lands of the company not in market, except by settlement upon or improvement thereof."

This was the document which Strong claims created a contract between him and the Northern Pacific Railroad Company for the sale of this tract of land, and his contention is that this letter was substantially an option given to Strong, which option contained the imposition of certain terms, viz., residence and improvement, upon the acceptance of which by Strong, by residence and improvement, the contract arose in his favor for the conveyance. While, for the sake of the argument, it will be fully conceded that such an option, when performed by the party to whom it is given, although there may be, under the terms of the contract, no obligation on the holder to perform any of the

conditions prescribed, constitutes a valid contract, when performed, and to enforce which a specific performance will be decreed, it remains also true that the option must be so definite and certain in its terms that it can be enforced in the same manner as an ordinary contract for the sale of land. We think it is very evident, upon the face of this letter, that it was not the intention of the agent of the railroad company, by it, to make any contract with Strong whatever; but, even if his intention had been otherwise, the paper is totally wanting in several of the necessary elements of such a contract. Treating improvement as a condition to be performed by Strong, the letter is totally silent as to what that improvement should be. It might be much or it might be little, and yet, if respondent's contention were recognized, he would be entitled to have his conveyance. But the absence of two absolutely necessary items of such a contract from this letter, viz., the price and the terms, would render it void under all circumstances. Besides which, the time when the contract was to be performed was not named, and the letter itself shows that that time was totally indefinite, viz., when the lands should come into market; that is, whenever the Northern Pacific Railroad Company saw fit to offer them for sale. Comparing this letter with the contract which was enforced in a case which is cited by respondents (*Perkins v. Hadsell*, 50 Ill. 216), the deficiencies in the present case clearly appear; and, had Carter never interfered with the matter, Strong would have been in no position to enforce a specific performance against the railroad company when the land was offered for sale, which seems to have been some time before Carter received his contract. Strong had the same right to apply to purchase the land that Carter did, and, from the interest taken by the railroad company in this case, it is more than likely that, had Strong's situation been made known to it before it con-

tracted with Carter, it would have given the former the preference; but it was under no obligation to do so, and its contract with Carter took it out of its power to deal with Strong concerning this land. Even had the railroad company chosen to recognize the correspondence between its land agent and Strong as a contract, the contract was void under the statute of frauds, and its sale to Carter operated as an election to avoid the contract, and Carter took the title. *Messmore v. Cunningham*, 78 Mich. 623 (44 N. W. Rep. 145). It follows that under whatever imputation the law would throw upon the appellant of knowledge as to Strong's rights from the fact that he was in possession of the land, that knowledge amounted to nothing more than information of a void contract, which was in no way binding upon it. The case seems to have been tried below somewhat upon the same theories as are cases where priority of settlement upon public lands of the United States is the deciding factor in suits to have the government patentees declared the trustees of the title for the actual first settlers. But all such cases depend upon statutes which give the priority of right to priority of settlement — an element which is entirely wanting here. The general policy of the Northern Pacific Railroad Company regarding the disposal of its lands was not a law, and it was in no wise bound until a contract which would have prevailed between private persons was entered into.

It appears that before this action was commenced, Strong, in a suit in the superior court of Spokane county, had obtained a decree requiring Carter to convey this land to him upon repayment of the purchase money paid to the Northern Pacific Railroad Company by Carter, with interest. This amount had been, under the order of the court, paid into court for the use of Carter, and respondents contend that the appellant was bound to see that that money was appropriated to the payment of its mortgage; but there

was no such obligation upon the appellant. Appellant was named as a party to that suit, but was never served with process, and, for aught that appears, had no knowledge of the pendency of the action. Strong knew of the existence of appellant's mortgage, and it was his duty, if he desired to secure the appropriation of the money paid as the purchase price of the land to the reduction of appellant's mortgage, to see to it that in some way that object was legally accomplished.

The judgment will be reversed, and remanded with instructions to the court below to enter a decree foreclosing appellant's mortgages upon the lands covered thereby.

DUNBAR, C. J., and HOYT, ANDERS and SCOTT, JJ., concur.